# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KATHERINE LADENBERGER,

                Plaintiff,              CASE NO. 16-14170
                                          HON. DENISE PAGE HOOD

v.

PLYMOUTH-CANTON COMMUNITY
SCHOOLS,

                Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#18]

## I.      BACKGROUND

### A. Procedural Background

On November 28, 2016, Plaintiff Katherine Ladenberger ("Ladenberger") brought this action against Defendant Plymouth-Canton Community Schools ("PCCS"), alleging Defendant violated Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Elliott-Larsen Civil Rights Act (ELCRA), MCL § 37.2202 *et seq.* (Count I), and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 (Count II). (Doc #1) Ladenberger seeks, among other things, injunctive relief, and compensatory, exemplary, and punitive damages. (*Id.*) Defendant filed an Answer to the Complaint on March 17, 2017. (Doc # 6)

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on April 9, 2018. (Doc # 18) Plaintiff filed a Response on May 14, 2018. (Doc # 21) On May 30, 2018, Defendant filed a Reply. (Doc # 22)

## B. Factual Background

Ladenberger began working for PCCS as a custodian in the Maintenance Department in 1991. (Doc # 21, Pg. 3) The Maintenance Department at PCCS consists of, Plant Engineers, Assistant Head Maintenance Custodians (AHM), and Custodians. (Doc # 18, Pg. 11) Plant Engineers are the highest-level employees in the Maintenance Department, followed by AHMs, then Custodians. (*Id.*) Assistant Head Maintenance Custodians are designated as AHM-A, who work at a high school, AHM-B, who work at a middle school, and AHM-C, who work at an elementary school. (*Id.*) The AHM-A are considered the highest-level employees among the AHMs. (*Id.*) The Plant Engineers are responsible for the supervision, maintenance operation, and repairs of the building and its utility systems. (*Id.* at 11–12) Each school building has one Plant Engineer, and some number of AHMs and Custodians. (*Id.* at 12) During the relevant time period, PCCS employed roughly 20 Plant Engineers and 70 employees in Custodial positions. (*Id.*)

Henry Lau ("Lau") was the Director of Maintenance for PCCS from 2004 until January 2014. (*Id.*) Only two females, Barb Bartel and June Rorabacher, had

been hired as Plant Engineers when Lau became Director of Maintenance for PCCS. (*Id.*)

Ladenberger worked as an AHM at Salem High School from 2000 to 2010. (*Id.* at 13)  In this capacity, Ladenberger supervised the Custodians and handled some minor maintenance tasks.  (*Id.*)  Ladenberer requested a demotion to a Custondian position in 2010, and remained a Custodian at Plymouth High School until June 2014.  (*Id.*)  As a Custodian, Ladenberger's primary responsibility was cleaning the building.  (*Id.*)

PCCS posted an opening for a Plant Engineer position at Gallimore Elementary School in March 2013.  Ladenberger applied for the position in early April 2013.  (*Id.*)  Ladenberger was one of 23 applicants for the position, and was selected as one of six finalists for the position.  (*Id.* at 13–14)  Ladenberger and two other female applicants named Paula McDaniels ("McDaniels") and Judy Spehar were among the finalists.  (*Id.*)  The three women were selected as finalists over twelve other male applicants for the position.  (*Id.*)

The finalists for the Gallimore Plant Engineer position were required to take a test and participate in interviews with the hiring committee.  (*Id.*)  The hiring committee consisted of Kimberly May ("May"), Gallimore Elementary Principal, a woman, Maintenance Director Lau, Plant Engineer Bruce Haarala ("Haarla"), and Union Representative Joe West ("West").  Dan Wolff ("Wolff") was hired as Plant

Engineer at Gallimore Elementary on April 19, 2013. (*Id.*) Wolff received the position because May, and the panel, believed that he possessed a superior understanding of, and greater experience in, handling maintenance issues than the other candidates. (*Id.* at 14–15)

Wolff was originally hired by PCCS on March 26, 1996. (*Id.*) Wolff had been an AHM-A at Salem High School since 2003, and was a higher-level maintenance employee than Ladenberger. (*Id.*) Before the interviews began, Lau saw Wolff perform the maintenance tasks required of Plant Engineers on occasion. (*Id.*)

Principal May decided that Wolff should be the Plant Engineer in her building. (*Id.* at 16) McDaniels testified that she believed Wolff was selected for the position because Lau already knew that he wanted Wolff for the position before interviews took place due to their past working relationship. (*Id.*) During her deposition on December 20, 2017, Ladenberger testified that, during interviews for custodial positions, Lau stated in a "kidding" manner that he did not want another Barb or June. (Doc # 18, Ex. 1, Pg. 79, 95) Lau denies he ever made such comments. (*Id.* at 17) Ladenberger did not know May prior to interviewing for the Gallimore Elementary Plant Engineer position.

Ladenberger testified that her biggest compeition for the position was McDaniels, who Ladenberger felt was "equally qualified" for the position. (Doc #

18-2, Pg. 81–82)  McDaniels believed that another applicant, a man named Jeff Maloney ("Maloney"), was the most likely to obtain the Gallimore position.  (Doc # 18-24, Pg. 57–58, 62)  McDaniels testified that Maloney was a higher level maintenance employee than Landerberger and McDaniels, and Maloney had completed all of the maintenance sessions.  (*Id.*)  McDaniels testified that the male applicant Maloney was not chosen for the position for "[p]robably the same reason [she] wasn't," and gender did not play a role in Maloney not receiving the job.  (*Id.* at 58, 70)  McDaniels testified that Principal May would not discriminate based on gender, and McDaniels's gender discrimination lawsuit related to this position was dismissed.  (Doc # 18, Pg. 18)

In September 2013, a Plant Engineer position opened at Hulsing Elementary School.  (Doc # 18, Pg. 20)  Ladenberger applied for the Hulsing position.  She was one of fifteen applicants for the job.  There were eleven male applicants and four women applicants.  (*Id.*)  The hiring committee for the Plant Engineer opening at Hulsing Elementary consisted of Director Lau, James Johnson ("Johnson"), Hulsing Elementary Principal, and Plant Engineer Union Representatives Kevin Jantovsky and Joseph West.  (*Id.*)

The hiring committee selected five finalists for the position.  McDaniels and Derek Leright ("Leright"), a man, were selected as the finalists for the Husling Elementary position.  (*Id.* at 21)  Ladenberger was not selected as a finalist.  Leright

was chosen as the Plant Engineer for Hulsing Elementary on October 2013. (*Id.*) Ladenberger testified that Leright's relationship with Johnson was the reason he was hired for the position, and that Johnson already knew before the job was posted that Leright would be hired as the Plant Engineer in Johnson's building. (Doc # 18-2, Pg. 83–84) Leright had worked at Husling Elementary as an AHM for a year prior to the Plant Engineer position becoming available. (*Id.*) Johnson had witnessed Leright complete multiple preventative maintenance projects involving the Husling Elementary utility systems. (Doc # 18, Pg. 21–23) Ladenberger testified that Leright was chosen for the position at Husling Elementary in August 2013, before she had the opportunity to apply. (Doc # 18-2, Pg. 83) McDaniels testified that she believed that Leright was qualified for the position. (Doc # 18-24, Pg. 100) Both Ladenberger and McDaniels testified that they believed that the decision to hire Johnson was made because he was a man, and they were women. (Doc # 18-2, Pg. 90; Doc # 18-24, Pg. 102)

In late September or early October 2013, Ladenberger received word that her daughter would require emergency surgery while the interview process for the Husling Elementary Plant Engineer position was underway. Ladenberger requested FMLA leave from PCCS. Ladenberger took an approved 7-day FMLA leave in October 2013. Plaintiff agrees that the district "absolutely" granted her leave to attend to her daughter.

On January 1, 2014, Ladenberger filed a gender discrimination claim with the EEOC, alleging that the jobs were given to men with less experience and qualifications than her because she was required to take FMLA leave due to her daughter's health, and she was the employee union president. (Doc # 18-30, Pg. 3) In response to Defendant's interrogatories asking Ladenberger to identify the facts and evidence to support her gender discrimination claim, Ladenberger noted that there had only been two women hired as Plant Engineers in PCCS—one in 1995 (approximately 22 years prior) and one in 1995 (approximately 30 years prior), and that Ladenberger took FMLA leave to care for her daughter after a lung transplant. (Doc # 18-27, Pg. 3)

In approximately 2010, PCCS maintenance employees' and teachers' health benefits were eliminated to correct a multimillion dollar budget deficit, and the maintenance staff was reduced from 90 employees to 70. (Doc # 18, Pg. 24) During the 2013-2014 school year, PCCS learned it faced another significant budget deficit. (*Id.*) On June 10, 2014, the school instituted multiple budget reductions, including laying-off 44 teachers and privatizing the Assistant Head Maintenance and Custodial employees. As a result of the privatization, all 70 AHM and Custodial employees received layoff notices in June 2014. (*Id.* at 25)

After the layoffs, PCCS contracted with Grand Rapids Building Services ("GRBS") to provide maintenance services for the District. (*Id.*) All 70 AHMs and

Custodians were offered an opportunity to continue working at PCCS in their same position, but as employees of GRBS. GRBS offered all 70 AHMs and Custodians a raise in their hourly wage over what they were paid by PCCS to continue working at PCCS. (*Id.*) Ladenberger did not contract back with PCCS as a Custodian. In June 2014, Ladenberger took a position directly with GRBS as a supervisor trainer. (*Id.*) She earned a salary of $40,000 per year with benefits, nearly twice her salary as a Custodian at PCCS, and more than $10,000 a year more than what Plant Engineers earned. (*Id.*)

On June 17, 2014, PCCS posted an opening for a Plant Engineer position at Workman Elementary school. (*Id.*) Director Lau was no longer at PCCS. Richard Peterson ("Peterson") was the new Director of Maintenance and Operations. (*Id.*) The hiring committee for this posting consisted of Human Resources Director Kurt Tyszkiewicz, Joe West, and Bruce Haarla. (*Id.* at 26) Ladenberger testified that this application process was different because Lau was no longer at PCCS, and not involved in the interviews. (*Id.*) In addition, building principals no longer had final decision-making authority. (*Id.*)

The hiring committee selected Michael Oakes, Sr. ("Oakes") following the interview process. (*Id.*) The committee felt he had the most experience in the areas of mechanical, plumbing, woodworking, and electrical. (*Id.*) Oakes's experience

included structural framing and drywalling, plumbing, electrical, and carpentry. (*Id.*)

Based on Oakes's experience, the hiring committee was confident Oakes could handle the "preventative maintenance" issues he would confront at the school. (*Id.* at 27) Joe West also worked with Oakes. (*Id.*) West witnessed Oakes complete various maintenance tasks relevant to the position. (*Id.*) McDaniels admitted that Oakes was qualified to be the Plant Engineer at Workman Elementary. (*Id.*) Ladenberger testified that she believes that Oaks received the position due to his close, personal relationship with Bruce Haarla, who was on the interview committee. (Doc # 18-2, Pg. 99–100, 110) Ladenberger claimed that the "favoritism" was because "Bruce Haarala and Mike Oakes drink together in the bar, in his garage, like four days a week." (*Id.* at 100)

In January 2015, PCCS posted an open Plant Engineer position at Allen Elementary school. (Doc # 18, Pg. 28) PCCS contacted Ladenberger about the position and encouraged her to apply while providing assistance. (Doc # 18-2, Pg. 103). Ladenberger was still working directly for GRBS when she applied for the position. (Doc # 18, Pg. 28) Eight people applied for the position. (*Id.*) Six of the applicants were males and two were females. (*Id.*) Bruce Haarla, Joe West and Bob Hayes were on the interview committee. (*Id.*) Haarla and West had participated on the previous three interview committees. Ladenberger was hired as the Plant

Engineer at Allen Elementary. (*Id.*) Ladenberger was chosen over six male applicants. (*Id.*) In 2015, all of the Plant Engineer positions Plaintiff applied for were eliminated as part of a budget cut. Wolff, Leright, Oakes, and Ladenberger were no longer Plant Engineers at PCCS. (*Id.*) When the Plant Engineering positions were eliminated, Ladenberger returned to GRBS, providing training to school districts. (*Id.*) Ladenberger eventually decided to leave GRBS to move closer to family on the west side of Michigan. (*Id.* at 29)

On November 28, 2016, Ladenberger filed this suit alleging gender discrimination under Title VII and the Elliott Larsen Civil Rights Act, and retaliation under the FMLA. Ladenberger asserts that she was more qualified for the positions than the male applicants who were hired because: (1) she had the highest seniority of all PCCS custodial staff members at the time of the promotion opportunity, even though she admits that seniority was not a determinative factor; (2) she completed all of the training classes that were required and designed for employees seeking promotion; and (3) she completed more training classes than the other candidates who received promotions before her. The classes Ladenberger references occurred approximately in 1995, roughly 18 years before the posting at the Gallimore Plant Engineer job. (Doc # 18, Pg. 18) Ladenberger attended four, half-day informational sessions in plumbing, carpentry, woodwork, and electrical. (*Id.*) The only candidate

who completed all of the maintenance classes was male candidate Jeff Collard.  (*Id.* at 18–19)  Collard was not hired as a Plant Engineer.  (*Id.* at 19)

For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

## II.    ANALYSIS

### A.  Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986).  A fact is material if it could affect the outcome of the case based on the governing substantive law.  *Id.* at 248.  A dispute about a material fact is genuine if, on review of the evidence, a reasonable jury could find in favor of the nonmoving party.  *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power*

*Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## B. FMLA Retaliation Claim (Count II)

Defendant argues that Ladenberger's FMLA claim is time barred by the applicable statute of limitations. Ladenberger has not contested this argument. A plaintiff asserting an FMLA claim must bring the action within two years after the date of the last alleged violation. 29 U.S.C. § 2617(c)(1). The limitation period runs three years if the violation is "willful." 29 U.S.C. § 2617(c)(2). Ladenberger alleges

that PCCS violated the FMLA in relation to the hiring of Dan Wolff in April 2013 and Derek Leright on October 13, 2013. Ladenberger filed this action on November 28, 2016, more than three years after the alleged FMLA violations.

The filing of a charge with the EEOC does not toll the statute of limitations for FMLA claims. *See Fulghen v. Potter*, No. 1011150, 2010 WL 486818, at *3 (E.D. Mich. Nov. 16, 2010). In addition, Ladenberger's failure to respond to Defendant's arguments regarding the FMLA claim warrants dismissal. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to…put flesh on its bones.") (citations and internal quotations omitted).

Ladenberger's FMLA retaliation claim is **DISMISSED**.

## C. Title VII and ELCRA/Gender Discrimination Claims (Count I)

The Sixth Circuit reviews claims of discrimination brought under the ELCRA under the same standards as claims brought under Title VII. *Idemudia v. J.P. Morgan Chase*, 434 F. App'x 495, 499 (6th Cir. 2011) (citation omitted). A plaintiff must proffer either direct or circumstantial evidence of discrimination to establish a *prima facie* case for Title VII or ELCRA gender discrimination. Ladenberger offers circumstantial evidence in support of her claim.

To prove intentional discrimination using indirect or circumstantial evidence, Ladenberger must use the burden-shifting framework established in *McDonnell Douglas* and modified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981);[1] *Idemudia v. J.P. Morgan Chase*, 434 F. App'x, at 500. A plaintiff first bears the 'not onerous' burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* (citations omitted). Once a plaintiff establishes a *prima facie* case, there is a presumption of discrimination. *Id.* Then the burden shifts to the defendant to rebut the presumption by providing evidence of a "legitimate, nondiscriminatory reason" for the adverse action taken. *Id.* (citation omitted). Once the defendant has provided a legitimate, nondiscriminatory explanation, the burden shifts back to the plaintiff to show that the defendant's stated reasons were pretext for discrimination. *Id.* "Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir.2006).

Ladenberger may establish a *prima facie* case by showing: (1) she is a member of a protected class; (2) she applied for and was qualified for the position; (3) she

---

[1] Ladenberger does not allege a mixed-motive claim pursuant to 42 U.S.C. § 2000e-2(m). *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 396-402 (6th Cir. 2008) (rejecting application of the *McDonnell Douglas/Burdine* framework for single-motive claims to mixed-motive claims). Ladenberger argues that the stated reasons for her termination were pretext for the unlawful, discriminatory purpose.

was considered for and denied the position; and (4) she was rejected for a person outside of a protected class who had similar qualifications for the position. *Mayhue v. Cherry St. Services, Inc.*, 598 F. App'x 392, 403 (6th Cir. 1996) (quoting *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996) (citation omitted).

Though not expressly stated, Defendant argues that Ladenberger cannot establish a *prima facie* case because the three men that were hired for the Plant Engineering positions over her had more demonstrated experience dealing with, among other things, mechanical, electrical, and plumbing issues, which reduced operational costs. Defendant contends that Ladenberger admittedly did not have the experience or skills the three male hires demonstrated. It is noted that neither party engaged in an analysis of the four elements to establish a *prima facie* case, other than addressing whether Ladenberger and the male hires were similarly qualified for the Plant Engineering positions.

The parties specifically argue the legitimate reason and pretext prongs of the *McDonnell Douglas/Burdine* burden shifting analysis and appear to somewhat conflate the *prima facie*, legitimate reason and pretext prongs arguments. Defendant's arguments regarding the applicants' experiences and skills are appropriately addressed under the pretext analysis, as Defendant has not argued that Ladenberger was not qualified for the positions. To be clear, as to the *prima facie* portion of the analysis, the Court, for purposes of this motion only, finds that

Ladenberger has established a *prima facie* case: (1) she is a member of a protected class as a woman; (2) applied for and was qualified for the Plant Engineer postions; (3) she was considered for, and denied all three positions; and (4) the people hired were all men with similar qualifications. The Court proceeds under the assumption that Ladenberger has established a *prima facie* case.

Shifting the burden to the Defendant, for the purposes of this motion, Defendant has provided sufficient evidence to support its contention that the male candidates who were hired had demonstrated an ability to address "preventative maintenance" issues related to the various schools' operations that are a part of the Plant Engineer position. Defendant also contends that Ladenberger admits that she was not as experienced in those areas as the male applicants who were hired. Ladenberger does not dispute Defendant's contention. Those are "legitimate, nondiscriminatory reason[s] for [Ladenberger's] rejection." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978).

Ladenberger must then be able to prove, by a preponderance of the evidence, that the legitimate reasons offered by the Defendant were pretext for discriminating against her based on her gender. Ladenberger may establish pretext by showing that Defendant's stated reasons (1) had no basis in fact; (2) did not actually motivate her rejection; or (3) were insufficient to explain Defendant's action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Ladenberger argues

that Defendant's emphasis on "preventative maintenance" did not actually motivate the decision to hire the male applicants over her.

A court must "ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n. 4 (6th Cir. 2009). The ultimate decision is whether the evidence of pretext, combined with the evidence establishing the plaintiff's *prima facie* case, would allow "the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147-48 (2000).

The Sixth Circuit has found that an employer's preference for certain skills over others when making an employment decision was within an employer's business judgment, and is not a means of establishing pretext because the issue is whether the decision was discriminatory, not whether the decision was wrong or mistaken. *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996), *cert denied*, 519 U.S. 1055 (1997). Courts should defer to sound business judgment to avoid "the illegitimate role of acting as a 'super personnel department,' overseeing and second guessing employers' business decisions." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 628 (6th Cir. 2006); *see also Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 460–61 (6th Cir. 2007) (although plaintiff proffered evidence that the retained employees were less qualified, he "proffers no evidence that the retained [employees] were

deficient with regard to Defendant's asserted non-discriminatory reason for the employees' termination."). "[E]mployers are generally 'free to choose among qualified candidates,' *Wren v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987), and '[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with,' *Hartsel*, 87 F.3d at 801." *Bender*, 455 F.3d at 626.

Defendant argues that Ladenberger cannot show that applicants with a demonstrated ability to perform the various maintenance tasks—what Defendant has referred to as "preventative maintenance"—were not Defendant's preference for the Plant Engineer positions. Ladenberger argues that the ability to perform "preventative maintenance" was not part of the Plant Engineer job description.

Ladenberger's position is unpersuasive. The Plant Engineer job description states that those in the position are "[r]esponsible for the operation, care, and maintenance of the heating, ventilating, lighting and plumbing, and electrical systems in the building." (Doc # 18-3) Ladenberger's emphasis on the phrase "preventative maintenance" does not detract from the general duties the Plant Engineer job entails. The phrase does not appear in the job description, but it is clear that Plant Engineers are responsible for managing and maintaining the building systems, including utilities. The "preventative maintenance" Defendant refers to fits within the job description, and is not an unstated job preference.

Ladenberger does not argue that the male applicants were not qualified for the Plant Engineer positions, but argues that she was more qualified because she took the classes required for the role approximately 18 years prior to the first Plant Engineer position opening for which she applied. Ladenberger notes that Wolff did not attend those classes. Ladenberger, however, has not provided any evidence that Defendant did not place more value on actual experience performing various maintenance projects than attending the training classes. In addition, Jeff Collard, the only applicant who attended all of the training classes, was also not hired. Attending the maintenance training classes 18 years prior to submitting her application did not necessarily make Ladenberger a more qualified candidate than the male applicants who were hired.

The Sixth Circuit has held that employers are not bound by the language used in a job description when making employment decisions. *Browning v. Dep't of Army*, 436 F.3d 692, 696 (6th Cir. 2006). "As explained in *Wrenn,* employment-discrimination laws do not diminish lawful traditional management prerogatives in choosing among qualified candidates, and an employer has great flexibility in choosing a management-level employee." *Id.* (internal citation and quotations omitted). In the present case, the evidence establishes that PCCS placed greater emphasis on demonstrated experience, and not just general experience and training. Each one of the successful male applicants had demonstrated their ability to perform

various maintenance tasks to someone who was involved in the Plant Engineer selection process. Ladenberger does not argue that she had demonstrated similar abilities.

Ladenberger argues, rather, that the male applicants were favored by members of the selection committees, including Director Lau and the principals, because of their working relationships with those individuals. Ladenberger argues that positions were filled based on familiarity and favoritism. Defendant does not dispute Ladenberger's contentions.

Employment decisions based on favoritism are generally not pretext for discrimination. Ladenberger stated that she believed the reasons she did not receive the Plant Engineer position at Gallimore was because Lau knew he wanted Wolff for the position based on his relationship with Wolff. In addition, McDaniels stated that she and Jeff Maloney were both not chosen because Lau favored Wolff.

Courts have generally recognized that, "as a matter of law, a supervisor's favoritism towards someone based on their personal relationship, even if the relationship consists of a romantic affair, 'is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender . . . [S]uch 'paramour favoritism' is not an unlawful employment practice under Title VII . . . .'" *Rowe v. Jewell*, 88 F.Supp.3d 647, 666 (E.D. La. 2015) (citing *Wilson v. Delta State Univ.*, 143 F. App'x 611, 613–14 (5th Cir. 2005) (quotation

omitted)). *See also Briggs v. Univ. of Detroit-Mercy*, 22 F. Supp. 3d 798, 809-10 (E.D. Mich. 2014) (explaining that "when a supervisor gives favorable treatment to her paramour, every other employee 'with whom she is not having sex' experiences the resultant discrimination or harassment, regardless of their gender.") (citing *Sherk v. Adesa Atlanta, LLC*, 432 F. Supp. 2d 1358, 1371 (N.D. Ga. 2006)).

It was not discrimination based on gender for Lau to prefer Wolff for the Gallimore Elementary Plant Engineer position because of their relationship. Following the same analysis, it was not discriminatory for Principal Johnson to want Leright to become the Plant Engineer at Hulsing Elementary because he was familiar with Leright and his skills addressing maintenance issues at the school. Nor was it discriminatory for Oakes to receive preference for the Plant Engineer position at Workman Elementary because of his relationship with Bruce Haarla.

The Court also notes that, even if the PCCS officials were mistaken about the relative qualifications and skills of the applicants for the Plant Engineer positions, it would not allow Ladenberger to show pretext for gender discrimination. "Under the 'honest belief' rule 'as long as an employer holds an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.'" *Todd v. RBS Citizens, N.A.*, 483 F. App'x 76, 83 (6th Cir. 2012). *See also Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) ("When an employer

reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless.").

Ladenberger highlights that the maintenance skills Defendant preferred are characteristic of male-dominated industries, but also states that she could not obtain on-the-job experience in those male-dominated maintenance industries while working for PCCS. (Doc # 21, Pg. 19)  Ladenberger has not presented evidence sufficient to raise a genuine issue of material fact as to whether Defendant's decisions to hire the male candidates over her were mere pretext for gender discrimination.  Regarding Ladenberger's discrimination claims under Title VII and ELCRA, Summary judgment is **GRANTED**.

## III.   CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Plymouth-Canton Community School's Motion for Summary Judgment is **GRANTED**.

This case is **DISMISSED WITH PREJUDICE**.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  August 16, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 16, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager